Your Honors, may it please the Court, my name is Joe Schaefer for Appellant Barbara May. As you may have gleaned from the briefing, there are many issues on this appeal, but I'd like to address three main points today. And those are the following. First, that defendants have now conceded that a finding of disability would have triggered an obligation to pay. That's at page 26 in their briefing. This is a binding admission that alone requires reversal. Second, the defendants have also conceded that short-term disability payments under the Salary Continuation Program would have been due if a finding of disability had been made. Any payment under a payroll practice, Salary Continuation Program, is wages under Washington law. And third, defendants have violated Washington's Consumer Protection Act by denying short-term disability without a reasonable investigation. And in all this discussion today about short-term disability salary continuation, I want to make sure that we keep two things in mind. First is that defendants conceded before the district court that for purposes of summary judgment and now for purposes of this appeal, Barbara May must be considered to be disabled. And second, I want to point out and highlight that the short-term disability plan here is a non-ERISA plan. It's a normal deference to a plan administrator, and those kinds of ERISA concepts don't apply. In your view, what kind of an animal is it? It's apparently not an ERISA plan because it's a payroll practice. Yes, Your Honor. Okay, so it's a payroll practice. But it's not, it's not, it's not, there's not an insurance policy. It's, is it a benefit? It's a discretionary benefit? One should say it's a contingent benefit that I would also, we have also argued. It's a contingent benefit. It can't be a wage under Washington law. So, so why doesn't it just take care of all those state claims? Okay, well, I disagree with the proposition that a contingent benefit cannot be a wage under Washington law. And specifically that is because a contingent benefit that has vested, the payments that would be made under that program are wages. A sick leave program that pays while you're out on sick leave is paid as a wage. And that's exactly what. Not under Teamsters. Oh, under Teamsters. The facts there were, under Teamsters, that the specific employees did not have a cash buyout. That's why they distinguished the Natchez Valley case. Sure, but the cash buyout is really different. That was, that was uncontingent. And that was the whole point of it. Well, the other part of that, though, is that the cash buyout was a program that vested sick leave as it accrued. And what the big fact was in the Teamsters case was that the people who were claiming that they needed to be paid weren't sick. The contingency had never come to fruition, and so the benefit was never vested. And therefore, there was no money owed and there was no money that could be characterized as wages. That's very different from this case. I don't understand how. Because in this case, she must be assumed to be disabled. And if so, then her contingent benefit has vested. But the plan conferred discretion on MetLife to make the disability determination. And the company's program was to offer this payroll practice as a benefit to extend sick leave beyond a week or two weeks. I think it was beyond seven days. Whatever it was, if you passed seven days, then you went on this extended leave program. That's correct. If, in MetLife's discretion, it found the employee met the qualifications. And the discretion that is referenced there is simply it's yet one more fact that should be considered among many. And that goes to the contract claim, really. Contracts are formed and their terms are defined by the objective manifestation of mutual assent. It's a fact-driven question. And what necessarily happened here when the district court dismissed this contract claim is it took one or maybe two facts, if you include the discretionary fact, but really it's the general disclaimer that it was included in a handbook that it doesn't change the at-will nature of the employment relationship. That's one fact. Weighed against all the other facts in the case that showed that. The acknowledgement that she signed said, you know, this isn't a contract. Right. But the at-will nature of the employment is not the issue here. The issue here is whether or not there was a contingent term to the contract, the employment relationship, that upon her becoming disabled came to fruition. And money that would have been paid under that plan are wages, properly characterized. So your understanding is, or your argument is, that the benefit, the short-term disability benefit plan was on the books, it was on offer, that if I, while that offer was still open, became disabled, as you say it's conceded, at least for purposes of summary judgment and appeal, that she was disabled, therefore that discretionary decision is off the table for now. Then she was at that point entitled to get compensation for the duration of the STD program, as long as she remained disabled. And as I understand it, that is the, she accepted the open offer, if you want to talk about it that way, at that point once she was entitled. She was entitled to those payouts, and those were vested rights, and if they didn't pay them, then your argument is what, that those then fall under wages? If they didn't pay them after all those facts? Yeah. Sure. Yeah. They fall in the same category as the sick leave that was part of the, was essentially deferred compensation. That's right. That's right. The wages, the issue of the wages is really one of characterization. It's what, we have no doubt that she would, if a finding of disability had been made, she would have been paid. How paid? The facts in the record show that the salary continuation program, look at the title, salary continuation program, is an exempt payroll practice under ERISA. It pays 100% of a person's ordinary paycheck. It's paid through their paycheck, through the ordinary payroll at Honeywell. So what, the contract issues whether she's entitled to the STD benefits. That's correct. Disabled employee. What turns on whether or not it's wages if we have to then move, as Reimer suggests, whether we do or not have to go through age determination? If we assume that there's an obligation to pay under the contract claim, then the money that would be paid under the short-term disability salary continuation program would be characterized as wages under Washington law. And what turns on that? What turns on it? Who's to care? The facts? Yeah. Why does it have? If she's entitled to it as a matter of contract, what difference does it make if we then go to the site? It carries with it double damages. Sure. Washington law carries with a set of remedies that get to attorney's fees and double damages if it were. . . Because of the time running here. Sure. The other question I have then is moving to the insurance characterization. Yes. You've raised an issue about insurance. Yes. Does the. . . MetLife is administering the STD program. Yes, that's right. And MetLife is administering the LTD program and is also the insurance backup on that, correct? That's correct. Okay. Now, does the Washington. . . Washington presumably has some kind of insurance commission or agency that regulates insurance companies? Yes, it does. Okay. Does it treat Honeywell's STD program as an insurance program? Does it treat its LTD program as an insurance program? And if it does one or the other, presumably, if it's an insurance under LTD, they do. But do they in any way, is there any evidence that they regulate the STD or they speak to the STD program? I've not seen that one way or the other. Our contention is grounded in the statute, the definition of insurance, specifically the definition of stop-loss insurance. Honeywell here agreed to indemnify the wages of its employees upon a set of determinable conditions, and that condition is disability. Here, that condition has been met. And as they did in just months prior to the current claim for disability benefits, they paid her upon a determinable contingency of disability and paid her through her ordinary paycheck. Washington certainly wouldn't regulate the LTD program as insurance. That's the ERISA plan, right? That's ERISA. That's right. So that's clear. Yes. And what character gives this program, what makes it insurance? Exactly. The employer just decides to give some extra sick leave out of its own assets, doesn't get any deduction, it doesn't get any payment for it from the employee, and it doesn't spread any risk. It just says, you know, I'll step up to the plate and extend your sick leave. Well, to the same extent that we have a contract from a contract claim, we have a continued employment and work provided for that contingent benefit. And the nature of it, I'm looking at nature over form. She said it. I mean, she worked there for 36 some odd years, and this program became available. Honeywell just said, well, we're going to extend your sick leave about in, like, when she'd been there for, like, what, 25 or 30 years. Sure. That's a unilateral modification to a unilateral contract. Even though they said this is not a contract, it's not, we can withdraw it at any time. We can terminate or modify it at any time. And she signed an acknowledgment that said that. And the next sentence of that same provision says, and it will not be modified or eliminated while pending claims are with us. Yeah. That exact same clause. So it agreed specifically that at a time. I mean, it just didn't try to withdraw the program. Right. But if the argument is going to be that it can remove the entire program and the reliance is on that, Section 9.1 of the short-term disability plan, then you have to read the second sentence as binding, too, that we will not eliminate the program while it will not affect any pending claims. So there, again, is another promise that we will abide by our program. Which it didn't break. I'm sorry? Which it did not break. It should have found a disability here. That's the fact issue for trial. That's what should go to trial. I guess I just don't understand that. I mean, MetLife had discretion. So is part of this case that MetLife exercised its discretion improperly? So if you win, are you asking for a judgment that MetLife exercised its discretion improperly, or would that go to trial? Well, I don't think that we need to defer to this any kind of discretion. That's an ERISA concept. It was specifically made to look like ERISA. That's what they wanted to have happen here. But that goes to the contract claim here. They've made a disclaimer. These are facts, and these are a family of facts that look at the conduct of the parties here. They've made a disclaimer that nothing's going to modify the at-will nature of the relationship. They've made this statement that we're going to have it be within the discretion of MetLife. But you look at every other fact here, and there's never been a contention that they didn't intend to abide by their promise to pay. They put Ms. May through a process of denials and appeals for a period of months, and they never made the statement that we only intend to pay if we feel like it. They have guidelines set forth. MetLife is mandated to follow its guidelines through the brochure promise that was made to Ms. May. It's right there in the brochure that says we will follow preset guidelines in determining disability. We have lots of contentions that that didn't happen. They ignored their own claims management guidelines, an issue that has never been addressed by either the appellees or the district court. And that reason alone, I think those are critical facts that reverse summary judgment. I'll reserve the rest of my time for rebuttal. Thank you. Mr. Sale. May it please the Court. Jerry Sale here on behalf of appellees. I think I will probably refer to the parties as plaintiff and defendants for convenience. I may also use glasses, and this is the first time we've been before the Court. They're not a disability. At least not in this case. I think the first thing I want to address is this question about the fact that the Court cannot determine whether there's a disability, that that presents a question of fact in this case. Can I just ask you to address a more fundamental question? Yes. And that is, does Honeywell take the position that the STD program could or could not be made available to a claimant at the time, as long as she was employed and as long as the program was still on the books, that Honeywell had any discretion to withhold benefits under that program simply because it decided at that point there was no contractual obligation to give benefits, regardless of whether they determined her to be disabled or not. They had discretion at that point to say, because there's not a contract here, sorry, but we've decided today that we're not offering the STD benefit program anymore. My first response to that is to say no, because it says specifically in the acknowledgment to her, and she signs that acknowledgment, that if she becomes disabled and makes it, and during that time their STD program is in effect, and they subsequently cancel that STD program, they will still complete the STD program for her. Okay. So you're not arguing that that noncontract clause somehow prevents her, this employee, May, from making a claim under the STD program? No, it does not prevent her from making a claim under the STD program. Okay. So when we move to the next level, that is, MetLife, as administrator on behalf of Honeywell, has discretion to decide whether or not somebody is disabled. Correct. Is that what we're fighting about? I believe that's what we're fighting about, exactly. And for purposes of summary judgment and for purposes of this appeal, therefore, it is my understanding that it is assumed that she is disabled. It cannot be. The answer to that is yes. Not that you're conceding she's disabled. Correct. On the merits, but that for purposes of summary judgment, she has to be treated as a disabled employee who was eligible to apply for the STD program. And then the question would be, is there anything that MetLife-slash-Honeywell did that was in violation of the STD program in deciding to deny her benefits? Well, here's the distinction, and this is where I was going to start. And this is also mentioned in the Keift case, which is cited in our materials. And that is, whether or not she is actually disabled is not a material question of fact of this determination. The question here is whether she was appropriately determined to be eligible for benefits. That is, whether she had satisfactorily shown to MetLife that facts that would permit MetLife to determine that she was eligible to receive those benefits. There's a dispute about whether she was disabled from the job or not in regard to making that decision. And MetLife had discretion to make that decision. And it is an undisputed fact in this case that MetLife did exercise its discretion to make that determination and ruled against her in regard to that. So while it's true that the question of whether she was in fact disabled cannot be decided for summary judgment, it's not the material fact. The material fact is whether she was eligible and the determination by MetLife of that question. And that was because of the information provided was insufficient and the doctor and all of that. Exactly right. And your argument is that that's not a material fact and dispute that requires trial because it's just purely within MetLife's discretion to make a decision of whether or not she's satisfied the preconditions. That's correct. And that's certainly correct in regard to the breach of contract claim. But there's no breach that they did in fact make that determination. And they looked at the materials and determined there was not objective evidence of the disability and decided on that basis. And even if one disagrees with that decision, that was within their discretion to make that decision. And that's what they did. How does that differ from the finding of whether or not she was disabled? In other words, they seem to conflate. She didn't give them enough evidence to show that she was disabled. The question before... Her being disabled is not a material fact and dispute. The question before the trial court is not whether she's disabled. The question before the trial court is whether MetLife made the determination and whether it exercises discretion in doing that. I just want to understand here. If the information submitted to MetLife on its face clearly showed a disability, but MetLife said, well, we just don't think fibromyalgia is a recognized medical disease. Therefore, even though she has all the symptoms, objective symptoms of fibromyalgia, that we don't consider to be a reimbursable or covered disability. You're saying that that's end of story, that even though the evidence shows that she would have the objective symptoms, they have the discretion and that's unreviewable? Probably not unreviewable. It is probably reviewable for abuse of discretion. Now, I don't know that. That's suggested in the Keeft case again. The Keeft case suggests that that decision, it's not, as pointed out, this is not ERISA, so this is not an arbitrary and capricious standard, but it is a discretionary standard. And I believe then it would be reviewed by the trial court for abuse of discretion, in fact. I'm going to ask the same question. What kind of an animal is this? I mean, your position with some force is that this isn't a contract, because it doesn't alter her at-will employment relationship. It's not an ERISA plan, so you don't measure it by ERISA standards. It's not insurance because it doesn't have the earmarks of insurance. It's a benefit, I guess? Yes, it is a benefit. So what can you sue for if the conduct by Honeywell is just arbitrary? It's just arbitrary.  It's just arbitrary. Just says, you know, we're going to pay it. Sorry. This is an excellent question to which I have not formulated the perfect answer, I guess I would say. Well, what's an imperfect question? I mean, just let's take a stab at it. I mean, it's not a breach of contract. Well, that's the one. That's exactly the one I am having problems with because there's no contract in regard to this case, and therefore can you sue for breach of contract in regard to a benefit. I'm sorry. Can we just focus? Okay. So your position is there is no contract. Correct. It is not an ERISA plan, so you can't sue under ERISA. Right. It's not insurance, so you can't sue because it was in bad faith or whatever. Okay. So what is it and what is the remedy, if any, if Honeywell just thumbs its nose at an employee's claim? The best answer is probably, and I can't remember the exact term, in the Thompson case, and it's not been argued in this case, but in the Thompson case it indicates that there are certain employee rights that are not contractual and that those employee rights that are not contractual may arise in the context of materials that are presented that grant a specific right. Well, all right. So if this is kind of a free-floating right, why doesn't May have it? She has, I believe, under that analysis, and certainly this is the way I feel about it, which is what made my answer to your question difficult for me, but I think she has a right to a determination. Of what? Of whether or not she is disabled under the meaning of the plan. By whom? By the court or by MetLife? By MetLife. By MetLife. Now, the question is then, is that reviewable? Is that reviewable? Yes. And if she has that right, because that's what's been put forth to her that they will do, and she has made the claim so that's cemented in place at the time she makes the claim, they're not going to change it after that, then the court, I believe, can review that for an abuse of discretion. But is that issue before us now? No. And it isn't because? It was not raised in that fashion. It was raised as this case was presented as a breach of contract case. Right. And it wasn't even pursued against MetLife, right? The breach of contract cannot be pursued against MetLife. That's correct. So it's pursued only against Honeywell. Yes. So you're saying that this free-floating right exists only against MetLife, it doesn't exist against Honeywell? It can't exist against MetLife because it's not an employee, so it's a freestanding employee right. It must exist against Honeywell. And probably under agency principles it goes to Honeywell. So we don't need to worry about that, in your view, because it's not raised? It's not been raised in that manner, certainly. And that is, it was never presented to the trial court. They should look at that question and consider whether or not MetLife or Honeywell, through its agent MetLife, abused its discretion in the determination that she had not presented enough information to qualify for disability, that she had not provided or her doctor had not provided objective indications of her inability to work, having fibromyalgia and degenerative back or joint disease. Correct. Also to the point, it is not insurance, and that makes a substantial difference in a number of issues, but particularly in regard to proving the elements of the CPA. It's not insurance. I think it's clearly not insurance for Honeywell. Honeywell is paying for it itself. And what they essentially raise is that it's insurance somehow for Ms. May, for plaintiffs in this case. But I think that's taken care of by the Stamp case. And I will point out just before then that there is no regulation of this by the insurance commissioner in this state because there is no insurance. So the insurance commissioner has nothing to do with a payroll plan of this sort, and they don't look at it. It's administered simply by Honeywell through its own money. And the Stamp case involved essentially the same question in the workers' compensation context. So it's a very similar fact situation. That is, the company in that situation provided workers' compensation benefits to the employee. So the employee would make a claim when the employee was injured and would get benefits from the workers' compensation program. The question was whether that program in that situation constituted insurance, and the answer was no, it did not. And I think that, as well as the Hepler case, the Hepler case they point out the primary basis for the decision was it was governed by ERISA, so the state law claims fell out of the case. But the footnote makes very clear that the court considers that the trial court erred in that case in determining that an employee funded payroll plan was insurance. So I think it clearly was not insurance. The impact of that is that under the CPA claims that they're making, and we didn't really get to the CPA claim, although the plaintiff's attorney intended to, under the CPA claim they cannot use the per se method of proving that claim, nor can the MetLife or Honeywell be at fault in failing to comply with the State regulations that govern insurance, and that's a very important consideration. Had I more time, I would go further into CPA, but I see that my time has, in fact, expired, so if there are no further questions, I will sit down. Thank you. Thank you very much. Mr. Schaffer. Your Honors, I think what I've just heard is the concession that there must be some kind of review, and the argument can be before the district court that it's a review for abuse of discretion, but our principal argument has always been that MetLife got it wrong. And we can go back and have an argument about whether or not they conducted an appropriate investigation and found out enough facts to make their determination whether or not they abused their discretion, but I think that's what I just heard here. Even if it is discretionary, we're talking about a situation that is, we've said it's not unreviewable, and so even if it is discretionary, I think their primary point in saying that there's no obligation to pay under their original contract arguments was that essentially they could have somebody who's paralyzed from the neck down and in their discretion decide, oh, we don't really think so, and I think now that's a retraction of that position. So we can go back to the district court and have that argument, but I think in any event, that requires reversal to make that factual determination of whether or not both, is she disabled, and now number two, was the investigation appropriate enough, and did they abuse their discretion in denying the claim despite the facts? And I would point to specifically that she had no use of her hands. I see my time has run up, and I thank you very much. Thank you. Counsel, the matter just argued will be submitted, and the Court will stand adjourned for this session.
judges: Rymer, Fisher, Hurley